Case 4:21-cr-00517   Document 1   Filed on 09/22/21 in TXSD   Page 1 of 15

United States Courts
Southern District of Texas
FILED
September 22, 2021
Nathan Ochsner, Clerk of Court

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Texas

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| Ricardo César Guedes, | ) | |
| aka "William Ericson Ladd" | ) | 4:21-mj-2016 |
| aka "William Ericson Ladd Caldas" | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  9/14/21, 12/15/20, 11/5/18, 7/24/13  in the county of  Harris  in the
Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C.§ 1542 | false statement in application and use of passport (10 year statute of limitations per 18 U.S.C. § 3291) |
| 18 U.S.C.§ 1028A | Aggravated identity theft |
| 18 U.S.C.§ 911 | False Personation: Citizen of the United States |
| 18 U.S.C.§ 1036 (a)(4) | Entry by false pretenses to any real property, vessel, or aircraft of the United States or secure area of any airport |

This criminal complaint is based on these facts:
SEE ATTACHMENT

☑ Continued on the attached sheet.

*Andrew Muir* (signature)
Complainant's signature

Special Agent Andrew Muir
Printed name and title

Sworn to me telephonically.

Date:  September 22, 2021

*Dena Palermo* (signature)
Judge's signature

City and state:  Houston, Texas

Dena Hanovice Palermo, USMJ
Printed name and title

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA<br><br>v.<br><br>Ricardo César Guedes, a.k.a. "William Ericson Ladd" a.k.a. "William Ericson Ladd Caldas"<br><br>Defendant | Case No. **4:21-mj-2016**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Andrew B. Muir being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I, the Affiant, am a Special Agent with the Diplomatic Security Service (DSS) and have been since May 2020. I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, including training on the preparation, presentation and service of federal search and arrest warrants and the collection of evidence. I also completed the DSS Basic Special Agent Course at the Foreign Affairs Security Training Center in Blackstone, Virginia, where I received further training on the investigation of passport and visa crimes.

2. As a DSS Special Agent I have training in the preparation, presentation, and service of criminal arrest and search warrants, and have been involved in the investigation of offenses against the United States, including fraud and related activity in connection with, passport, visa, and identity fraud. I am authorized to conduct criminal investigations into these offenses by 22 U.S.C. §2709.

3. I have been assigned to the Houston Field Office since April 2021 where my duties are focused on criminal investigations to protect the homeland and integrity of U.S. travel documents to prevent harm to the United States and its citizens from criminal and terrorist activity.

4. Prior to my employment at DSS, I was a City of Madison, Wisconsin, Police Officer from October 2013 to May 2020. I investigated hundreds of crimes and made more than one hundred felony and misdemeanor arrests. I have participated in the execution of search warrants. I have participated in searching and managing crime scenes, including for many violent crimes and homicides, and personally collected physical, digital and documentary evidence. I have conducted many custodial and non-custodial interviews of suspects, arrestees, witnesses and victims. I have participated in intelligence gathering for and the organization of major criminal investigations.

5. This Affidavit is submitted in support of a criminal complaint charging Ricardo César Guedes, a.k.a. "William Ericson Ladd," a.k.a. "William Ericson Ladd Caldas," (henceforth "the **Subject**") with committing violations of:

   a. Title 18 U.S.C. § 1542, false statement in application and use of passport (counts 1-3),

   b. 18 U.S.C. §1028A Aggravated identity theft (count 4),

   c. 18 U.S.C, §911 False Personation: Citizen of the United States (count 5) and

   d. 18 U.S.C. §1036 (a)(4) Entry by false pretenses to any real property, vessel, or aircraft of the United States or secure area of any airport or seaport (count 6)

6. This affidavit does not set forth all of my knowledge nor summarize all of the fact-finding efforts in the overall investigation, rather, this affidavit sets forth facts that support probable

cause to arrest the **Subject**, as well as relevant background information. During this investigation, I, the Affiant, have developed information I believe to be reliable from the following agencies and sources: information provided by DSS, U.S. Department of State – Bureau of Consular Affairs (CA), U.S. Department of Homeland Security – Transportation Security Administration – Investigation Division (TSA INV), U.S. Department of Homeland Security – U.S. Citizenship and Immigration Service (USCIS) – Fraud Detection and National Security (FDNS), Customs and Border Protection (CBP), the State of Florida, the State of Texas, publicly visible social media and other law enforcement, government and corporate records.

7. Where I, the Affiant, refer to conversations herein, they are related in substance and, in-part, based on conversations between fellow agents and other law enforcement personnel. Any observations referenced herein that I did not personally witness were relayed to me in oral and/or written reports by agents of the DSS or other agencies. All figures, times, weights, and calculations herein are approximate.

## OVERVIEW OF THE INVESTIGATION

8. The U.S. Department of State Bureau of Consular Affairs (CA) manages a national Fraud Prevention program, executed by Fraud Prevention Managers (FPM) to protect the integrity of U.S. travel documents issued by the Department of State, including U.S. Passports and Visas.

9. FPMs routinely conduct various records checks while processing applications for U.S. travel documents. This internal process at CA at times produces sufficient evidence to believe criminal fraud has occurred, in which case, CA refers the case to DSS for criminal investigation.

10. In the instant case, CA identified various fraud indicators in the **Subject's** passport renewal application which resulted in a criminal investigation into the **Subject's** identity.

11. The breadth and scope of my investigation, conducted in partnership with the Transportation Security Administration Investigations Division, revealed that the **Subject,** a Brazilian citizen named Ricardo César Guedes, stole the identity of the deceased Victim, William Ericson Ladd, and committed the offenses herein described through the use of the assumed "Ladd" identity and the means of identification thereof in various interactions with the United States of America, its agencies, and certain financial institutions within and subject to its jurisdiction.

## BACKGROUND: APPLICABLE LAW

12. This Affidavit concerns fraud in connection with the application for and issuance of a United States passport, aggravated identity theft, impersonation of a citizen of the United States, fraudulent entry to the secure space of an airport.

13. Section 1542 of Title 18 provides in its relevant part that: "[w]hoever willfully and knowingly makes any false statements in an application for a passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules pursuant to such laws ..." is guilty of such offense.

14. To obtain a United States passport, the applicant must be a United States citizen and legally entitled to a United States passport. The applicant must show proof of identity and United States citizenship at the time of application. According to the United States Department of State regulations, (contained in 22 C.F.R. Part 51), a passport applicant is required to submit a passport application and to truthfully answer all questions and state every material matter or fact pertaining to his or her eligibility for a passport. All information and evidence submitted in connection with a passport application is considered part of the application. Before submitting the United States passport application, the applicant must read the following statement:

> I declare under penalty of perjury all of the following 1) I am a citizen or non-citizen national of the United States and have not, since acquiring U.S. citizenship or nationality, performed any of the acts listed under the "Acts of Conditions" on page four of the instructions of this application (unless explanatory statement in attached); 2) the statements made on the application are true and correct; 3) I have not knowingly and willfully made false statements or included false documents in support of this application; 4) the photograph attached to this application is a genuine, current photograph of me; and 5) I have read and understood the warning on page one of the instructions to the application form.

After reading this statement, the applicant must sign his/her name in the space provided immediately under the statement, thus swearing and affirming that all information on the application is true and correct and that they understood the warning. It is only after the applicant signs the form that the application is accepted for processing.

15. Section 1028A of Title 18 provides in its relevant part that: "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person..." is guilty of such offense. Subsection (c) (7) applies section 1028A of Title 18 to any provision contained in chapter 75, which includes Section 1542 of Title 18.

16. Section 911 of Title 18 provides in its relevant part that: "[w]hoever falsely and willfully represents himself to be a citizen of the United States..." is guilty of such offense.

17. Section 1036 (a)(4) of Title 18 provides in its relevant part that: "[w]hoever, by any fraud or false pretense, enters or attempts to enter...any secure area of any airport" is guilty of such offense.

18. An airline employee with Known Crew Member ("KCM") status obtains the privilege to enter the secure area of an airport (also known as the "sterile" area) through a special line which bypasses the general public's waiting queue.

19. To obtain KCM status, a prospective crewmember must undergo vetting, part of which involves identifying themselves by name. KCMs are subjected to security measures after they identify themselves as a KCM. Passage into the secure ("sterile") area requires identifying oneself by name to security staff.[1]

20. Section 1344 of Title 18 provides in its relevant part that: "[w]hoever knowingly executes...a scheme or artifice...to obtain any of the moneys, funds, [or] credits...owned by...a financial institution, by means of false of fraudulent pretenses, representations, or promises" is guilty of such offense.

## BACKGROUND: VICTIM TRUE IDENTITY

21. On September 14, 1974, a child was born to William Francis Ladd and Debra Lynn Ladd (nee Green) in Atlanta, Georgia. They named their child William Ericson Ladd (henceforth "Victim"). Victim's birth is documented in State of Georgia Certificate of Live Birth #110-74-056577.

22. On August 8, 1979, Victim died in a car crash two miles east of Colville, Washington, on Highway 20. Victim's death is documented in State of Washington Certificate of Death #19393.

23. In July 2021, DSS special agents interviewed Debra Lynn Hays (previously Debra Lynn Ladd (nee Green) at her home. Hays told the agents that she is the mother of Victim and she

---

[1] These, and other procedures pertaining to the KCM status are known to me but redacted to protect sensitive security information.

confirmed that her son was born on September 14, 1974 and died in an automobile crash in the State of Washington and was buried first in Colville, Washington and then exhumed and reburied in Alabama.

24. Hays did not recall if Victim was issued a social security number (SSN) during his life. She did not recognize the last four digits of the SSN used by the **Subject**.

25. A commercial database of grave photographs includes a record of Victim's grave. There is a gravestone at the Roselawn Gardens of Memory in Decatur, Alabama which reads:

ERIC
WM ERICSON LADD
SEPT 14 1974
AUG 8 1979
NOW I LAY ME DOWN TO SLEEP

## BACKGROUND: SUSPECT TRUE IDENTITY

26. I, the Affiant, believe the **Subject** is in fact a Brazilian citizen named Ricardo César Guedes, born August 6th, 1972.

27. DSS investigators assigned to Overseas Criminal Investigations at the U.S. Consulate General in Recife, Brazil, (DSS-OCI) identified Maria Auxiliadora Duarte Guedes as potentially the **Subject's** mother based on information the **Subject** made publicly available.

28. DSS investigators obtained records from Brazilian law enforcement who advised that Maria Auxiliadora Duarte Guedes was listed as the mother of Ricardo César Guedes, born August 6, 1972.

29. Brazilian law enforcement records list both Maria Auxiliadora and Ricardo César Guedes at an address on Travessa Ibiza in Florianopolis, Brazil.

30. DSS investigators also obtained records in Brazil that the **Subject,** using the Victim's identity, registered with an airline using the same address on Travessa Ibiza.

31. DSS investigators identified a Brazilian national identity document in the name of Ricardo César Guedes, indicating he was born on August 6, 1972 in Sao Paolo, Brazil, to Maria Auxiliadora Duarte Guedes. Accompanying this national identity document were a set of fingerprints belonging to Ricardo César Guedes taken by Brazilian authorities in the 1990's.

32. On September 17, 2020, technical staff at Customs and Border Protection (CBP) advised investigating agents that they had compared the Brazilian fingerprint card belonging to Ricardo César Guedes and the fingerprint card submitted by the **Subject** in the Victim's identity as part of his background check as a flight attendant. These fingerprints matched.

33. I, the affiant, searched U.S. government databases which contain records for all aliens who have applied for and/or received U.S. Citizenship through naturalization. There is no record of Ricardo Guedes born August 6, 1972 in that database.

34. Based on the forgoing, I believe the **Subject** to be in fact Ricardo César Guedes, a Brazilian citizen, not William Ericson Ladd, the Victim, a deceased U.S. Citizen.

## PROBABLE CAUSE

35. Department of State records show that the **Subject** first applied for a U.S. passport in 1998 and made subsequent renewal and amendment applications regularly through 2020.

36. Department of State records show that on April 14, 1998, the **Subject** submitted DS-11, Application for U.S. Passport, #015649223 to a passport agent in Washington, DC. In that application, the **Subject** claimed his name was "William Ericson Ladd," and his date of birth was September 14, 1974. The **Subject** further claimed his father was "William Ladd" and his mother "Debra Green." The **Subject** claimed that his SSN was XXX-XX-9433.

37. Database checks reveal the SSN was issued in North Carolina in 1996, 17 years after Victim died.

38. Department of State records show that as a result of application #015649223, the **Subject** was issued a valid U.S. Passport in the name of William Ericson Ladd.

39. Department of State records show the **Subject** then filed six other renewal and amendment applications for U.S. passports and passport cards between 1998 and 2020.

40. In sum, the **Subject** was issued or amended U.S. passport documents in 1998, 2006, 2007, 2009, 2013, 2015 and 2018. Department of State records show the **Subject** currently holds two active passport books and one active passport card in Victim's identity and was issued two other now-expired passport books after his first application in 1998.

41. On December 16, 2020, the **Subject**, purporting to be "William Ericson Ladd Caldas" signed DS-82, U.S. Passport Renewal Application for Eligible Individuals, #684518950. The **Subject** listed his current residence at 12846 Bridle Springs Lane, Houston, TX, 77044 as his permanent and mailing address. This address is within the jurisdiction of this Court. The **Subject** submitted a marriage license for "William Ericson Ladd" and his spouse, last name Caldas, substantiating the name change from "William Ericson Ladd" to "William Ericson Ladd Caldas." The National Passport Center received this application on December 30, 2020. The **Subject** listed his employment as a flight attendant for United Airlines.

42. Accompanying DS-82 #684518950, as required, the **Subject** submitted existing U.S. Passport Book #5\*\*\*\*\*\*73[2] in the name of William Ericson Ladd as proof of citizenship and identity. [Count 1: 18 U.S.C §1542]

---

[2] The full number redacted here and in other occurrences in this Affidavit are known to me but withheld here to protect personal identifiable information (PII).

43. On November 5, 2018, the **Subject**, purporting to be "William Ericson Ladd" signed DS-82 U.S. Passport Renewal Application for Eligible Individuals, #793312625. The **Subject** listed the same address on Bridle Springs Lane in Houston, Texas as his permanent and mailing address. The **Subject** listed his employment as a flight attendant for United Airlines.

44. The **Subject** executed DS-82 #793312625 in person at the Houston Passport Agency located in Houston, Texas, within the jurisdiction of this Court.

45. As a result of DS-82 #793312625, the **Subject** was issued U.S. Passport #5******73, which is valid at the present time. [Count 2: 18 U.S.C §1542]

46. On July 24, 2013, the **Subject**, purporting to be "William Ericson Ladd" signed DS-82 U.S. Passport Renewal Application for Eligible Individuals, #790580188. The **Subject** listed the same address on Bridle Springs Lane in Houston, Texas as his permanent and mailing address. The **Subject** listed his employment as a flight attendant for United Airlines.

47. The **Subject** executed DS-82 #790580188 in person at the Houston Passport Agency located in Houston, Texas, within the jurisdiction of this Court.

48. As a result of DS-82 #790580188, the **Subject** was issued U.S. Passport #5******66, and U.S. Passport Card # C0*****24 which are both valid at the present time. [Count 3 18 U.S.C §1542]

49. There is probable cause to believe that in each instance described in Counts 1-3, the **Subject**, who, as described, is not the Victim, presented himself as someone he is not and thus willfully and knowingly made a false statement in an application for a passport with the intent to induce or secure the issuance of a passport under the authority of the United States, for his own use, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws, all in violation of Section 1542 of Title 18.

50. In each instance described in Counts 1-3, the **Subject** used the Victim's means of identification, namely the Victim's name, date of birth, place of birth, and parent's names.

51. The Victim was deceased pre-dating the **Subject's** earliest known use of the Victim's means of identification, and as such was deceased at all times described in Counts 1-3. The **Subject** could not have obtained any lawful authority to use the Victim's means of identification.

52. The charge in Counts 1-3, Section 1542 of Title 18, is included in Chapter 75, and as such is specifically enumerated as precursor felony violation in Section 1028A (c)(7) of Title 18.

53. There is probable cause to believe that the **Subject** during and in relation to an enumerated felony violation (Counts 1-3), knowingly used, without lawful authority, a means of identification of another person, in violation of Section 1028A of Title 18 [Count 4].

54. In each instance described in Counts 1-3, the **Subject** declared to the United States of America under penalty of perjury that he was in fact "a citizen or non-citizen national of the United States..." The **Subject** further declared that he was born in Atlanta, Georgia. In doing so, he made a claim to United States citizenship under Section 1401 of Title 8, which states that "a person born in the United States, and subject to the jurisdiction thereof..." "shall be nationals and citizens of the United States at birth..."

55. Again, the **Subject** has been identified as a Brazilian citizen who has not naturalized as a U.S. Citizen. I believe the **Subject** has no legitimate claim to U.S. Citizenship.

56. There is probable cause that by falsely declaring himself to be a Citizen of the United States in the three passport renewal applications charged as Counts 1-3, the **Subject** falsely and willfully represented himself to be a citizen of the United States, in violation of Section 911 of Title 18 [count 5].

57. Count 6 involves the **Subject's** fraudulent entry into the secure area of an airport in violation of Section 1036(a)(4) of Title 18. That Section defines an "airport" as in Section 47102 of Title 49: "an area of land or water used or intended to be used for the landing and taking off of aircraft, an appurtenant area used or intended to be used for airport buildings or other airport facilities or rights of way; and airport buildings and facilities located in any of those areas..."

58. The George Bush Intercontinental Airport (IAH), including its appurtenant area and buildings including the terminals constitute an airport as defined in Section 47102 of Title 49.

59. "Secure area" as defined by Section 1036(a)(4) of Title 18 means "an area access to which is restricted by airport authority, captain of the seaport, or a public agency..."

60. TSA regulations call the "secure area" the "sterile area," which is broadly the part of the airport to which the general public is prohibited access and ticketed passengers must pass through TSA security screening to enter. An area of this description exists within IAH.

61. On September 14, 2021, I, the affiant, and other DSS and TSA special agents observed the **Subject**, using the Victim identity, present himself at KCM checkpoint at Terminal C at IAH. At approximately 6:36 PM, I observed him approach the KCM checkpoint from the public area of the Terminal. I then crossed into the sterile area, where moments later, other agents and I observed the **Subject** exit the KCM checkpoint and enter the sterile area.

62. The **Subject** was identified as such because he was observed leaving the **Subject Premises,** arrived at the airport as a passenger in a vehicle registered to the **Subject,** and eventually boarded a flight which U.S. government records confirmed the **Subject**, in the Victim identity, was scheduled to be on. A DSS special agent also observed the **Subject** holding a phone which said "Eric's iPhone" on the lock screen.

63. By doing so, the **Subject,** by fraud and false pretenses, entered the secure area of an airport contrary to 1036(a)(4) of Title 18. [Count 6]

64. This investigation also involves the **Subject's** fraudulent home mortgage which obtained as a result of the **Subject's** false or fraudulent pretenses and representations, namely to his identity.

65. The Harris County Appraisal District (HCAD) indicates that "William Ladd" (the **Subject)** owns a single family residence located at 12846 Bridle Springs Lane, Houston, TX, 77044. HCAD further indicates that the **Subject** acquired ownership of this property on 04/25/2013.

66. From refuse left for collection at 12846 Bridle Springs Lane, DSS obtained part of a Wells Fargo Home Mortgage Statement for loan number *******288[3] for a property address at 12846 Bridle Springs, Houston TX, 77044. The portion of the statement DSS acquired did not show the account holder's name.

67. DSS and TSA special agents observed the **Subject** at this address on September 14, 2021 and September 18, 2021.

## CONCLUSION

68. Based upon the forgoing, I submit that there is probable cause to believe that the **Subject,** committed 3 violations of 18 U.S.C. §1542, and one violation each of §§1028A, 911, and 1036(a)(4).

---

[3] The full account number is known to me but redacted to protect PII.

Respectfully submitted,

*[signature]*

Andrew B Muir
Special Agent
Diplomatic Security Service
U.S. Department of State

Electronically submitted and telephonically sworn on the 22nd day of September, 2021. and I find probable cause.

*[signature: Dena Palermo]*

THE HONORABLE DENA HANOVICE PALERMO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF TEXAS